UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:24-cr-246-KKM-TGW

WILDER DAZILINE DUMEUS,

    Defendant.
_____

## ORDER

Defendant Wilder Dumeus moves to suppress evidence of illicit drugs obtained during a traffic stop. Mot. to Suppress (Doc. 42) (MTS); *see* FED. R. CRIM P. 12(b)(3)(C). For the reasons below, I deny that motion.

## I. BACKGROUND

Around 10:30 PM on April 21, 2024, Tampa police officers Jacob Petitt and Bryan Velasquez were patrolling Tampa's Highland Pines and Grant Park neighborhoods in an unmarked police car. Tr. (Doc. 61) 17:22–24, 18:1–2, 12–14. As they were patrolling, Officer Petitt observed a dark blue sedan fail to stop at a stop sign and come to rest in a crosswalk before turning onto the street that the officers were travelling on. *Id.* 20:3–13, 24:7–9, 23–25:1. The sedan turned in behind the officers, so they switched lanes to let it pass. *Id.* 24:24–25:6. Officer Petitt had his window partially rolled down, and as the car passed, he noticed

that its windshield was "extremely dark, very difficult to see through." *Id.* 25:5–26:8. Based on his prior experience, Officer Petitt understood that Florida law prohibited any "film on the front of the windshield at all past the AS1 line, which is a mark in the top portion of the windshield." *Id.* 8:24–9:2, 16–18; *see* § 316.2952(2)(b), Fla. Stat. As Officer Petitt noticed that the sedan's windshield was tinted "all the way down to the windshield wipers past the AS1 line," he believed that he had observed a traffic infraction. Tr. 26:9–20.

The officers pulled in behind the sedan and ran its plates. *Id.* 26:22–25. They learned that it was registered to Wilder Dumeus, who had previous interactions with the Tampa police involving the unlawful possession of firearms, possession of illegal drugs, and resisting arrest. *See id.* 27:4–21; *see also id.* 51:5–6 (testifying that Dumeus was "flagged to be armed"). The officers activated their lights to initiate a traffic stop, but the sedan travelled "several blocks" before finally pulling over. *Id.* 28:4–10, 30:3–6. The officers knew the place the car stopped to be "a high[-]crime area." *Id.* 33:9–13.

Officer Petitt approached the driver's side door and told the driver, Wilder Dumeus, that he had stopped him for failing to stop at a stop bar.[1] *Id.* 30:23–31:3. As he stood near the driver's window, Officer Petitt observed "partial burnt blunts" in the car's cupholder, saw

---

[1] Officer Petitt admits that no stop bar was present at the intersection where he first saw Dumeus's sedan, and that Petitt instead saw Dumeus fail to stop behind a crosswalk. Tr. 15:1–4; 41:17–42:1; *see also id.* 46:5–10. Officer Petitt explained that his reference to a stop bar "was miscommunication on [his] part. [He] didn't communicate it correctly to [Dumeus]." *Id.* 42:3–4.

"a round oblong bulge in [Dumeus's] front right pocket," and "smelled the odor of burnt marijuana." *Id.* 31:9–15. Officer Petitt was also able to look at the windshield more closely, and he continued to believe it was illegally tinted. *Id.* 31:16–32:2. Officer Petitt asked Dumeus if he had been smoking, to which Dumeus replied, "Yes, earlier." *Id.* 32:11–15. Officer Petitt ordered Dumeus to step out of the vehicle. *Id.* 32:16–21. Dumeus appeared "hesitant, at one point reaching for the shifter," so Officer Petitt "took control of [Dumeus's] hands and pulled him out and handcuffed him behind the back." *Id.* 33:2–5.

After handcuffing Dumeus, Officer Petitt patted him down to "check him for weapons." *Id.* 33:16–19. Petitt felt "a hard rock substance in [Dumeus's front right] pocket," which Dumeus claimed was marijuana. *Id.* 33:22–34:1. Officer Petitt searched Dumeus's pocket and found "a clear plastic bag containing a crystal-like substance that [he] suspected was meth[amphetamine]." *Id.* 34:2–7.[2]

Officer Petitt moved Dumeus and the methamphetamine to the front of the police vehicle. *Id.* 34:15–18. After a few moments, Dumeus grabbed the bag of methamphetamine and "began to tear it up." *Id.* 36:11–15. Officer Petitt subdued Dumeus. *Id.* 36:16–18.

---

[2] Officer Velasquez searched Dumeus's other pocket and found a "corner tear of plastic containing cocaine." Tr. 34:8–12.

A grand jury indicted Dumeus for possession with intent to distribute 50 grams or more of methamphetamine. 2d Superseding Indictment (Doc. 29) at 1; *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A). Dumeus moved to suppress evidence obtained during his arrest, *see* MTS, and I held an evidentiary hearing, *see* (Docs. 47, 60). Dumeus's motion is ripe for resolution.

## II.   LEGAL STANDARD

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures," including unreasonable traffic stops. *See* U.S. CONST. amend IV; *Whren v. United States*, 517 U.S. 806, 809–10 (1996). To deter unconstitutional police misconduct, the ordinary remedy for a Fourth Amendment violation is suppression of the unlawfully obtained evidence. *See Davis v. United States*, 564 U.S. 229, 236–38 (2011).

## III.   ANALYSIS

Dumeus argues that all the evidence from the traffic stop should be excluded. His arguments cluster around three key junctures. First, he says that the stop itself was an unlawful seizure because the officers lacked reasonable suspicion that a traffic violation had occurred. MTS at 5–7. Second, he maintains that the odor of marijuana did not give the officers either reasonable suspicion for a *Terry* stop or probable cause to search the car. *Id.* at 7–9. Third, he argues that Officer Petitt was not justified in frisking him because no

reasonable person would have believed that he was a threat. *Id.* at 9–11. All his arguments fail.

### A. The Officers Had Reasonable Suspicion That Dumeus Violated Florida's Window-Tint Law

Dumeus argues that the officers could not possibly have had reasonable suspicion to stop him based on his window tinting because Florida law pegs the lawful amount of tinting to "light transmittance," it was dark outside when they stopped him, and neither officer measured his window tinting. MTS at 5–7; *see* § 316.2953, Fla. Stat. (allowing window tinting if the material has "a light transmittance of at least 28 percent in the visible light range"). The government responds that Dumeus had full front windshield tinting, which is never permitted except for "[s]unscreening material along a strip at the top of the windshield." § 316.2952(2)(b), Fla. Stat.; *see* Opp. (Doc. 46) at 6 ("[Officer Petitt] observed that the entire front windshield of Dumeus's vehicle was tinted.").

The government is right. Tinting on the windshield below what Florida law calls the "AS/1" line is a window-tint violation, and observing window tinting below that level establishes reasonable suspicion. *See United States v. Parker*, 512 F. App'x 991, 992 (11th Cir. 2013) (per curiam) ("[T]he district court did not err by denying [the defendant's] motion to suppress" because it "credited [a police officer's] testimony regarding his observation of a window tint violation—specifically that the tint on the front window went below a certain level, known as the 'AS 1' line."); *see also United States v. Hooks*, No. 23-

5

80067-CR, 2023 WL 8239261, at *4 (S.D. Fla. Oct. 3, 2023) ("[T]he traffic stop was lawful because the officers had probable cause to believe the tint on the vehicle's front windshield violated Florida law."), *report and recommendation adopted*, No. 23-80067-CR, 2023 WL 8235101 (S.D. Fla. Nov. 28, 2023); *United States v. Hunter*, No. 2:06CR81 FTM29DNF, 2006 WL 3804833, at *6 (M.D. Fla. Dec. 22, 2006) (similar). Officer Petitt testified that he observed that Dumeus's whole windshield was tinted before stopping Dumeus, and I find his testimony credible. Tr. 26:9–20 ("[T]he tint extended from the roof all the way down to the windshield wipers past the AS1 line."). He therefore had reasonable suspicion to stop Dumeus for violating Florida's windshield-tint law.[3]

### B. The Smell of Marijuana Can Support Reasonable Suspicion and Probable Cause

Next, Dumeus argues that the odor of marijuana did not give the officer's reasonable suspicion for a *Terry* stop or probable cause to search Dumeus's car.[4] MTS at 7–9. He says that in the light of recent changes in federal and Florida law, marijuana's odor alone is never enough to create even reasonable suspicion. *Id.* at 8 (citing *Baxter v. State*, 389 So. 3d 803,

---

[3] Because I conclude that the officers had reasonable suspicion to stop Dumeus based on his windshield tinting, I need not decide whether they also had reasonable suspicion to stop him for failing to stop at a crosswalk.

[4] Of course, the stop was initially supported by reasonable suspicion of a traffic violation, *see supra* III.A, and the later-found methamphetamine provided probable cause to search the car, *see* Opp. at 3–4; *see also United States v. Gooden*, 148 F. App'x 846, 848 (11th Cir. 2005) (per curiam) (probable cause to search car under automobile exception existed where "the police had smelled the odor of marijuana coming from [the car] and had arrested the driver of the car for actual possession of crack cocaine found in his pocket").

813 (Fla. 5th DCA 2024) (en banc)). The government responds that binding Eleventh Circuit precedent holds that the smell of marijuana by itself establishes probable cause. Opp. 6–7.

Again, the government is right. "[T]he smell of marijuana emanating from a vehicle is enough to provide probable cause" "under longstanding Circuit precedent." *United States v. Beasley*, No. 8:23-cr-140-KKM-AAS, 2023 WL 7109668, at *5 (M.D. Fla. Oct. 27, 2023); *see, e.g.*, *United States v. Dixon*, 901 F.3d 1322, 1339 (11th Cir. 2018); *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc). Dumeus does not explain why I may disregard this precedent. The principal case he relies on applies Florida law and recognizes a split of authority among Florida intermediate appellate courts on this issue. *Compare Baxter*, 389 So. 3d at 810–13 (holding that "the smell of cannabis cannot on its own support a detention"), *with Owens v. State*, 317 So. 3d 1218, 1220 (Fla. 2d DCA 2021) (holding that "the smell of marijuana emanating from a vehicle continues to provide probable cause for a warrantless search of the vehicle" even in the light of recent legal developments).

More, even if the smell of marijuana does not by itself support reasonable suspicion or probable cause, Officer Petitt acted in reliance on binding precedent, so exclusion is inappropriate. *See Davis*, 564 U.S. at 241 ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.").

7

Dumeus points to no relevant case under federal or Florida law published at the time that the officers stopped Dumeus that supports his view that marijuana's odor does not establish probable cause to search the vehicle. Florida's Fifth District Court of Appeals decided *Baxter* about four months after Officer Petitt pulled Dumeus over. *See Baxter*, 389 So. 3d 803; Tr. 17:22–24, 18:1–2. And *Baxter* itself affirmed the denial of a suppression motion because the officer in that case's "continued reliance on longstanding precedent" regarding the scent of marijuana" was "objectively reasonable." *Baxter*, 389 So. 3d. at 813.

Any reliance by Officer Petitt on the scent of marijuana does not support granting Dumeus's motion.

### C. The Frisk Was Reasonable

Finally, Dumeus argues that Officer Petitt was unjustified in frisking him for weapons after he had exited his car, a frisk that revealed methamphetamine in Dumeus's pocket. MTS at 10–11. Dumeus claims that Officer Petitt lacked a reason to believe that Dumeus posed a threat because he was "compliant and respectful," "the officers received no reports that [he] was involved in any type of criminal activity," and he was "placed in handcuffs . . . before the pat-down began." *Id.*

An officer may frisk a person incident to a lawful *Terry* stop "if he has reason to believe that his own safety or the safety of others is at risk." *United States v. White*, 593 F.3d

8

1199, 1202 (11th Cir. 2010). The analysis is based on the totality of the circumstances. *United States v. Johnson*, 921 F.3d 991, 998 (11th Cir. 2019) (en banc).

The circumstances here reveal that frisking Dumeus was reasonable. While the officers outnumbered Dumeus and he was not resisting, other factors together support the reasonableness of a frisk: (1) Dumeus stopped in a high-crime area; (2) it was night; (3) Officer Petitt smelled marijuana; and (4) Dumeus had a significant criminal history, including firearm and narcotics crimes as well as resisting arrest. *See Johnson*, 921 F.3d at 998 (considering whether a frisk occurred in a high-crime area at night); *White*, 593 F.3d at 1203 (similar); *United States v. Knight*, 562 F.3d 1314, 1327 (11th Cir. 2009) (concluding that the scent of marijuana supported a frisk); *United States v. Corley*, 408 F. App'x 245, 247 (11th Cir. 2011) (per curiam) (similar); *United States v. Bishop*, 940 F.3d 1242, 1249 n.4 (11th Cir. 2019) ("[K]nowledge of a defendant's criminal history could cause a reasonable officer to have heightened safety concerns."); *United States v. Goss*, No. 22-11581, 2023 WL 6568124, at *2 (11th Cir. Oct. 10, 2023) (per curiam) (similar). And Dumeus identifies no authority concluding that a frisk under similar circumstances was unreasonable.

Officer Petitt's frisk was thus permissible.

9

## IV. CONCLUSION

Officer Petitt had reasonable suspicion to believe that Dumeus violated Florida's window-tint law. The odor of marijuana supports probable cause. And Officer Petitt's frisk of Dumeus was reasonable in the light of the time of day, the location, indicia of criminal activity, and the officers' knowledge of Dumeus's substantial criminal history.

Accordingly, defendant Wilder Dumeus's Motion to Suppress (Doc. 42) is **DENIED**.

**ORDERED** in Tampa, Florida, on March 11, 2025.

Kathryn Kimball Mizelle
United States District Judge